*E-Filed 6/16/10*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JIMENA BARRETO,

    Petitioner,

    v.

MARY LATTMORE, Warden,

    Respondent.

                              /

No. C 09-1290 RS (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

This is a federal habeas corpus action filed by a *pro se* state prisoner pursuant to 28 U.S.C. § 2254 in order to challenge her state convictions. For the reasons set forth below, the petition is DENIED.

## BACKGROUND

In 2005, a Contra Costa County Superior Court jury found petitioner guilty of two counts of second degree murder, leaving the scene of a vehicle accident, driving under the influence, and driving with a suspended license. (Ans., Ex. C4 at 1.) The trial court sentenced petitioner to an aggregate term of thirty years-to-life for the murder convictions,

No. C 09-1290 RS (PR)
ORDER DENYING PETITION

and concurrent terms for the other convictions. After conviction, petitioner sought, and was denied, relief on direct and collateral state review.

Evidence presented at trial shows that in 2003, petitioner, intoxicated from ingesting alcohol and pharmaceuticals, drove onto a sidewalk in Danville, California, striking and killing two children, Troy, aged 10, and Alana, aged 7, Pack. (*Id*. at 2.) Evidence was also presented that petitioner fled the scene of the accident, and was apprehended two days later. (*Id*. at 5.)

As grounds for federal habeas relief, petitioner alleges that (1) the trial court violated her due process rights by giving constitutionally flawed jury instructions; and (2) defense counsel rendered ineffective assistance in violation of petitioner's Sixth Amendment rights.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at

413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

## DISCUSSION

### I.  Jury Instructions

Petitioner's first claim arises from the implied malice and second degree murder instructions given to the jury. Petitioner claims that the trial court violated her right to due process when it instructed the jury that "[t]he mental state of implied malice may be measured over a period of time. Drinking and/or taking prescription drugs to the point of intoxication in anticipation of driving, reasonably may be held to exhibit a conscious disregard for the safety of others." (Pet. at 6.) Petitioner's first objection to this instruction is that it is contrary to the fundamental rule that criminal intent and the criminal act must exist concurrently in order for guilt to be found. (*Id*.) Her second objection is that use of the instruction lowered the prosecution's burden to prove intent. Specifically, petitioner asserts that the use of "implied malice involves a disregard for the safety of others,"[1] rather than the "proper definition" of "implied malice requires a disregard for human life" impermissibly relieved the state of its burden of proof. (*Id*.)

The state appellate court rejected this claim:

> We have no quarrel with the basic premise articulated by defendant that an invariable element of murder, as with every crime or public offense, is a union or joint operation of act and intent, or criminal negligence, unless it is excluded expressly or by necessary implication . . . The defendant's wrongful intent and the physical act must coincide. [Citations removed.]

---

[1] This language appears in the implied malice and second degree murder instructions given to the jury, CALJIC Nos. 8.11 and 8.31. (Ans., Ex. C4 at 8.)

> However, we find nothing in the supplemental implied malice instruction that contravened or "undercut" the fundamental requirement of concurrence of act and intent. The instruction did not in any manner inform the jury that the necessary mental state of implied malice may somehow exist autonomously or without the correlation of a deliberately performed unlawful act — in this case, of driving in an impaired state over a curb and onto a sidewalk. Rather, the instruction properly advised the jury that implied malice may not be — and in vehicular homicide cases frequently is not-a momentary state of mind. Cases have observed that the state of implied malice may indeed exist for a protracted period of time while the defendant consumes alcohol and then engages in a course or pattern of dangerous driving while impaired. The trial court's admonishment to the jury that implied malice may be measured over a period of time was therefore not an incorrect statement of the law.
>
> Moreover, the jury was given the standard instruction on the concurrence of act and general criminal intent (CALJIC No. 3.30), and was specifically instructed (CALJIC No. 3.31.5) as to the second degree murder charge that "there must exist a union or joint operation of act or conduct and a certain mental state in the mind of the perpetrator. Unless this mental state exists the crime to which it relates is not committed." Finally, the murder instruction also substantially covered the requirement of concurrence of act and intent by advising the jury that murder is the unlawful killing of a human being "when the killing resulted from an intentional act" dangerous to human life committed "with express or implied malice." [Citations removed.] Thus, the jury knew that to convict defendant of second degree murder the mental state of implied malice must have existed when the accident and unlawful killing occurred. We find no error in the admonition that implied malice may be measured over a period of time.

(Ans., Ex. C4 at 11–12) (footnote removed).

Evidence presented at trial showed that petitioner drank alcohol frequently and in large amounts, and often used pharmaceuticals to excess. As noted by the state appellate court,

> [during her police interview] [petitioner] acknowledged her "drinking problem" and her "record" of prior drunk driving. She stated to the officers, "I do drink all the time," but denied that she had "been drinking" before the accident. [petitioner] admitted that she had taken prescription Vicodin and a "muscle relaxer" intermittently for the past week following a knee injury that resulted from a fall. On the day of the accident she took "a few" of each of the medications in the morning, and again in the afternoon "before and after" her nap. [petitioner] claimed she "was fine," however, when she left her apartment in the car at around 6:35 p.m. to report for work in Danville as a nanny that night. She said she "was just driving, everything was fine," then suddenly she "saw the kids" and was "off the road." When [petitioner] saw someone giving "the little boy" CPR she "just got scared and left." [Petitioner] stated she "didn't know they were dead" when she left the scene. [Petitioner] also told the officers that her Mercedes "has problems" with swerving to the left and shaking, but an examination and "road test" of the car revealed that it was "fully functional and intact," without any preexisting mechanical "deficiencies found." The brakes, steering, and suspension of the vehicle all "worked fine."

(*Id.* at 5.)

The prosecution also offered evidence that petitioner had thrice been convicted of driving under the influence, and had her driver's license suspended as a result. (*Id.* at 5–6.) Former employers testified that they had fired petitioner, who had worked as a nanny, for drinking, or for exhibiting signs of drinking, on the job. One former employer testified that petitioner took two of her Vicodin pills without permission. (*Id.* at 6.) Evidence was also presented that in the weeks before the incident in Danville petitioner had been drinking even more heavily than before, and was often seen "intoxicated" around the pool or parking lot of her apartment complex. (*Id.*) One friend testified that petitioner confessed that she was fearful of losing her job because of her heavy drinking. (*Id.*)

According to trial testimony, a few weeks before the Danville incident, petitioner, in response to a warning that she was too drunk to drive, said that "she always drove like this and she had no problems." (*Id.*) Also in the weeks before the accident, petitioner had been taking two prescription drugs: the narcotic analgesic Vicodin and the muscle relaxant Flexeril. Her "physician and pharmacist testified that they instructed her not to exceed the prescribed dosage, and warned her that the side effects of drowsiness and dizziness caused by the sedating medications were enhanced by alcohol," and also warned her not to drive or operate machinery while under the influence of the medications. (*Id.* at 7.)

On the day of the Danville crash, petitioner was seen drinking by the pool in her apartment complex, and was noticeably under the influence of alcohol or medication, as indicated by her slurring her words, staggering walk, and difficulty walking up stairs. Just before the crash, Danville residents noticed petitioner driving "erratically," and others observed that at two stop lights, petitioner nearly hit the cars in front of her. (*Id.*)

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the defective instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. at 72; *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). The instruction may not be judged in artificial isolation, but must be

considered in the context of the instructions as a whole and the trial record. *See Estelle*, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).

      Applying these principles to the instant matter, the Court concludes that petitioner is not entitled to habeas relief on this claim. With respect to petitioner's first contention — that the instruction violated the requirement of finding a concurrence of act and intent — nothing, as the state appellate court noted, "contravened or "undercut" the fundamental requirement of concurrence of act and intent." Indeed, the jury was specifically instructed that it had to find a concurrence of act and intent in order to find petitioner guilty. (Ans., Ex. A3 at 814.) In fact, rather than undercutting the rule, the instruction aided the jury in making the very determination that fundamental rule mandates. That is, by allowing the jury to consider evidence of how petitioner became intoxicated "in anticipation of driving," the instruction in turn allowed the jury to take into account a broad range of evidence with which to make an informed decision whether there was a concurrence of act and intent.

      Petitioner's second objection — that "implied malice involves a disregard for the safety of others," rather than "implied malice requires a disregard for human life" impermissibly relieved the state of its burden of proof — is also unavailing. First, petitioner's claim is in essence a challenge to state law, violations of which are unremediable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). How a state defines malice, implied or otherwise, is left to the discretion of the state's legislature. Furthermore, a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Petitioner has not shown how the differences in language implicates her federal constitutional rights. Rather, she asserts that one formulation is superior to the other. Such a claim is best left to the determination of California's courts, which here have ruled that the jury instruction given at trial was a correct statement of the

law.

Second, the jury was clearly instructed that it could convict petitioner only if the prosecution proved her guilt beyond a reasonable doubt, Ans., Ex. A3 at 811, as is constitutionally mandated. *See In re Winship*, 397 U.S. 358, 364 (1970). As such reasonable doubt instructions were given, and as the allegedly flawed instruction did not lower, either directly or by implication, that burden of proof, petitioner's claim is DENIED.

## II.     Assistance of Counsel

Petitioner claims that defense counsel rendered ineffective assistance when he (A) failed to consult sufficiently with petitioner before trial, (B) ignored petitioner's request to plead to lesser charges, and failed to inform petitioner that she could in fact plead guilty to lesser charges, (C) failed to file motions to change venue, to suppress her confession to police, and to modify her sentence, (D) did not inform petitioner that she could testify, and (E) called an incompetent expert witness to testify, and failed to call rebuttal and character witnesses. (Pet. at 8ff.) The state appellate court did not address these claims in its written opinion.

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, the petitioner must establish two factors. First, she must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id*. at 687–68. Second, she must establish that she was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. Where the defendant is challenging her conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice

prong of the *Strickland* test if the petitioner cannot establish incompetence under the first prong. *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

### A.     Alleged Failure to Consult

Petitioner has alleged that defense counsel failed to consult sufficiently with petitioner before trial. Petitioner's claim is insufficiently detailed. Though she has pointed to a few specific instances of an allegedly deficient performance — such as that defense counsel met with petitioner only four times — petitioner has not stated exactly how these alleged deficiencies adversely affected her defense. For example, petitioner has not shown what defenses or evidence counsel should have, but failed to, present, or how his failure to meet with her more frequently deprived him of that knowledge. Also, petitioner has not shown that these defenses or evidence would have, if presented, aided her defense. In short, she has not shown prejudice.

Furthermore, the evidence against Petitioner, which included eyewitness testimony and petitioner's admissions, was quite strong. Not only did petitioner admit to police and eyewitnesses that on the day of the accident she had ingested "a few" pills of Vicodin and some muscle relaxers, eyewitnesses testified that petitioner drove onto the sidewalk and into the victims, killing them:

> Just before the accident, [victims] Troy and Alana were accompanied by their mother Carmen, and two friends Mckenna and Hunter Doliber, as they proceeded on the sidewalk of Camino Tassajara near the intersection of Rassani Drive just before dark at around 7:00 p.m. Troy and Hunter were on their scooters; Alana rode her bicycle; Carmen and Mckenna were walking. Carmen testified that as the road curved she suddenly "looked back" and noticed car headlights pointing toward them, followed by a "loud noise." The car driven by [petitioner] struck Hunter on the right foot, then hit Troy and caused him to roll over the windshield, then collided with Alana and threw her to the left. Troy's scooter flew through the air after impact with the car and hit Carmen in the knees. [Petitioner]'s car was traveling at a speed of between 35.53 and 43.37 miles per hour — which was within the legal speed limit — and did not brake or take any corrective action before the collision with the victims. The primary cause of the accident was an "unsafe turning movement" by [petitioner] whereby she continued "going straight" over the curb as the street curved to the left. Both Troy and Alana died at the scene of the accident.
>
> Witnesses testified that [petitioner] stopped her car, a gold 1979 Mercedes, on the far side of the intersection and approached Carmen, who was screaming.

> [Petitioner] asked "what had happened," and inquired if the children were dead. When [petitioner] realized the victims were dead she repeatedly stated, "I don't want to go to jail." [Petitioner] also mentioned that she had taken medication for her back. [Petitioner] appeared to be unsteady on her feet, a bit disoriented, and frightened, but none of the witnesses at the scene smelled alcohol on her breath.

(Ans., Ex. C4 at 2–3.) Petitioner has been unable to set against, let alone seriously challenge, this powerful evidence. Accordingly, As petitioner has not demonstrated prejudice, her claim is DENIED.

**B.    Pleading to Lesser Charges**

Petitioner claims that defense counsel ignored petitioner's expressed wish to plead to lesser charges, and failed to inform petitioner that she could in fact enter such a plea. (Pet. at 8–9.)

Petitioner's claim is without merit. There is no allegation or evidence that the prosecutor or the trial court offered petitioner a plea agreement. If no offer of a plea agreement was in the offing, defense counsel cannot have been deficient in failing to inform petitioner of it. As petitioner has failed to show that defense counsel's performance was deficient, it is unnecessary to consider whether the performance resulted in prejudice. *See Siripongs*, 133 F.3d at 737.

**C.    Motions**

Petitioner claims that defense counsel rendered ineffective assistance when he failed to file motions to (1) change venue, (2) suppress her confession to police, and (3) modify her verdicts and subsequent sentence. (Pet. at 8, 9, 10 & 11.)

**(1)    Motion to Change Venue**

Petitioner contends that owing to the publicity arising from the charges, she was unable to receive a fair trial in Contra Costa County, where the incident occurred. Defense counsel, petitioner asserts, rendered ineffective assistance by failing to seek a change of the trial venue. (*Id*. at 10.) Petitioner states that the headlines about the case were "numerous and widespread" in the eighteen months before the trial and that nine of the twelve jurors had

heard of the case before being called to jury service. (*Id*.)

"The standards governing a change of venue ultimately derive from the due process clause of the fourteenth amendment which safeguards a defendant's [S]ixth [A]mendment right to be tried by 'a panel of impartial, 'indifferent' jurors.'" *Harris v. Pulley*, 885 F.2d 1354, 1361 (9th Cir. 1988) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)). If the trial court is unable to seat an impartial jury owing to "prejudicial pretrial publicity or an inflamed community atmosphere," due process requires that the trial court grant defendant's motion for a change of venue. *Id*., (quoting *Rideau v. Louisana*, 373 U.S. 723, 726 (1963)).

The prejudicial effect of pervasive publicity is tested under the presumed prejudice or the actual prejudice standards. Under the presumed prejudice standard, "prejudice is presumed when the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime." *Id*., (quoting *Rideau*, 373 U.S. at 726–27). Given that virtually every case of any consequence will be the subject of some press attention, the presumed prejudice principle is rarely applicable, however, and is reserved for an "extreme situation."[2] *Id*., (quoting *Mayola v. State of Alabama*, 623 F.2d 992, 997 (5th Cir. 1980). Under the actual prejudice standard, a court must determine if the jurors demonstrated actual partiality or hostility that could not be laid aside. *Id*. at 1363 (quoting *Murphy v. Florida*, 421 U.S. 794, 800 (1975). "[J]urors need not, however, be totally ignorant of the facts and issues involved." *Id*. (quoting *Irvin*, 366 U.S. at

---

[2] "In *Rideau*, the Supreme Court found the facts concerning the media publicity to be sufficiently extreme to invoke the presumed prejudice rule. Rideau confessed to robbing a bank in Calcasieu Parish, kidnapping three of the bank's employees, and killing one of them. This confession was videotaped and subsequently broadcast three times by a local television station. At the time, Calcasieu Parish had a population of 150,000. At trial, the court denied defendant's motion for a change of venue. The Supreme Court held that the denial of the motion to change venue violated the due process clause. The Court noted that three jurors who decided the case had seen the televised confession. The Court concluded "without pausing to examine a particularized transcript of the voir dire examination of the members of the jury" that due process required a trial before a community of persons who had not seen the televised confession. The Court reasoned that the televised confession "was Rideau's trial," and "[a]ny subsequent court proceedings in a community so pervasively exposed to such a spectacle could be but a hollow formality." *Harris*, 885 F.2d at 1361–62.

723). "The relevant question is not whether the community remembered the case, but whether the jurors . . . had such fixed opinions that they could not judge impartially the guilt of the defendant." *Id.* (quoting *Patton v. Yount*, 467 U.S. 1025, 1035 (1984)).

In the instant matter, petitioner has not shown that trial counsel should have made such a motion, or that such a motion, if made, would have been meritorious. In short, petitioner has not shown prejudice under either standard. Petitioner has not presented evidence that demonstrates that Contra Costa County was saturated with prejudicial and inflammatory media publicity about the crime. The one headline she gives relates that a Columbian woman, who admitted taking prescription pain killers, and who the district attorney said was also under the influence of alcohol, lost control of her car and fatally injured two children. While such headlines may have appeared, petitioner has not shown evidence of how widespread or numerous the headlines were, or whether they were inflammatory in the first instance, or consistently thereafter. Nor has petitioner offered any evidence that the members of her jury had such fixed opinions that they could not judge her guilt impartially. She offers only that nine jurors had heard of the case previously. This is insufficient. *See Harris*, 885 F.2d at 1361. She has not alleged, much less shown, that these jurors had fixed opinions, or that they could not be impartial. Accordingly, petitioner's claim is DENIED.

**(2) Motion to Suppress**

Petitioner claims that the police continued to question her even after she invoked her right to counsel. (Pet. at 10–11.) Defense counsel, petitioner contends, should have moved to suppress her statement to police on grounds that it was unconstitutionally obtained. (*Id.*) In her statements to police, petitioner confessed to drinking alcohol heavily, and that she had taken Vicodin and a muscle relaxer on the day of the accident. (Ans., Ex. C4 at 5.)

Whatever the merits of petitioner's contention, she has not shown that she suffered prejudice as a result of defense counsel's allegedly deficient performance. As noted above, the evidence against petitioner was quite strong, even without her incriminating statements to

police.  Petitioner has not presented anything to set against the strong evidence in support of her guilt.  Accordingly, this claim is DENIED.

### (3) Motion to Modify Sentence and Verdict

Petitioner claims that defense counsel rendered ineffective assistance by failing to move to modify the verdicts against her and her subsequent sentence.  (Pet. at 11.)  According to petitioner, it was unjust that she received two fifteen-to-life sentences for a crime that was "essentially an accident."  (*Id*.)

Petitioner has not shown that defense counsel's performance was deficient, or that it resulted in prejudice to her.  Specifically, petitioner fails to show that her view of the crime as "essentially an accident" — and therefore not intentional — provided sufficient grounds on which a motion could be based, or that such a motion, if brought, would have been meritorious.  Indeed, the jury found that her crimes arose from malice, as her convictions for second degree murder indicate, which was an implicit finding that the deaths of the victims were not, "essentially an accident."  Petitioner's claim is DENIED.

## (D) Right to Testify

Petitioner claims that defense counsel failed to advise her of her right to testify.  (Pet. at 11.)  Whatever the possible merits of such an assertion, petitioner has not shown prejudice.  Had petitioner taken the stand, she would have had to answer highly difficult questions regarding her drug and alcohol use, and her three convictions for driving under the influence, as well as questions regarding her behavior before, during, and after the accident; a narrative which would have included her fleeing from the scene.  Evidence of such habits and acts were presented at trial, and her having to answer questions regarding such evidence could have greatly damaged her defense.  Furthermore, the other evidence of petitioner's actions, as detailed above, was quite strong.  On such a record, petitioner has not shown that she suffered prejudice.  Petitioner's claim must therefore be DENIED.

**(E)    Witnesses**

Petitioner claims that defense counsel rendered ineffective assistance by calling an incompetent expert witness to testify, and by failing to call rebuttal and character witnesses. (Pet. at 12.) Petitioner asserts that the expert witness discussed only her past, not the current offense, and was made to look "foolish" by the prosecutor. Whatever the shortcomings of this witness, petitioner has failed to show prejudice. Petitioner has not shown that the expert witness was qualified to opine on the offense, or what he could have offered that would have aided her defense. Taking this consideration, along with the strong evidence against petitioner, her claim must be DENIED.

As to the rebuttal and character witnesses, petitioner asserts a host of deficiencies by her counsel. Specifically, she claims that defense counsel failed to (1) call petitioner's neighbors who could testify that they had never seen petitioner drunk by the pool, (2) present evidence that the witness who testified that she had tried to prevent petitioner from driving drunk was having an affair with petitioner's husband, (3) call petitioner's sister to testify as to petitioner's character, (4) render effective assistance when he called a local newscaster to testify, thereby increasing the media coverage of the trial, (5) present evidence that she had no need to steal Vicodin because she had her own prescription for the drug, or (6) present evidence that she had not taken more than the prescribed dose of Vicodin on the day of the crime. (Pet. at 12–16.)

Petitioner has not shown that she was prejudiced by such alleged lapses on the part of defense counsel. Even if all the above evidence had been presented, and if the evidence had effectively rebutted the bits of evidence petitioner points to, it does not take away from the remaining very convincing evidence of petitioner's heavy and frequent drinking, her mixing of alcohol and pharmaceuticals, the eyewitness testimony of petitioner driving onto the sidewalk and killing the victims, and her fleeing the crime scene. As the state appellate opinion reflects, the evidence supporting petitioner's guilt was very strong. Accordingly, petitioner's claim is DENIED.

**CONCLUSION**

The state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

DATED: June 16, 2010

RICHARD SEEBORG
United States District Judge